IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF MARYLAND
**Baltimore Division**

| | | |
|---|---|---|
| IN RE: | * | Chapter 7 |
|    DAMOND DURANT | | |
|    SHARAE DURANT | | **Case No.: 17-20232** |
|       **Debtors'** | * | |
| * * * * * * | * * * * * * * | |
| DAMOND DURANT, JR. | | |
| | * | |
| **Plaintiff** | | |
| | * | Adver No.: 17−00350 |
| Vs. | | |
| | * | |
| DAMOND T. DURANT, SR. | | |
| | | |
| **Defendant** | * | |
| * * * * * * | * * * * * * * | |

## TABLES OF AUTHORITIES

*Allen v. McCurry*, 449 U.S. 90, 94-95, 101 S.Ct. 411, 414-15, 66 L.Ed.2d 308 (1980)................7
*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)...........7
*Anderson v. Liberty Lobby, Inc*.,477 U.S. at 255, 106 S.Ct. at 2513-14........................................7
***Damond Durant, Jr., vs. Damond Durant, Sr*.**, Case No. 24C15000246 ....................................3
*Fleming v. Gordon* (In re Gordon), 491 B.R. 691 (Bankr. D. Md. 2013).....................................8
*Grogan v. Garner*, 498 U.S. 279, 284 & n. 11 (1991).........................................................7
Id. at 697 ........................................................................................................8
In re *McNallen*, 62 F.3d 619, 624 (4th Cir. 1995) ..............................................................8
*Neal v. Clark*, 95 U.S. 704, 709 (1877) .........................................................................8
Pahlavi, 113 F.3d at 20 ...........................................................................................8
*Porter Hayden Co. v. Bullinger*, 350 Md. 452 (1998),.......................................................8
*Sartin v. Macek,* 535 F. 3d 284 (4th Cir. 2008) ...............................................................8

### Statutes

§ 13–221 ...........................................................................................................10
§ 15-114 ..........................................................................................................11
§ 523(a)(4) ........................................................................................................8
§ 523(a)(4), ......................................................................................................8
Estates and Trusts Title § 13-312................................................................................11
Maryland Estates and Trust Article §13–214 .................................................................9
Maryland Estates and Trust Article 13-214 ...................................................................6

Maryland Uniform Transfer to Minors Act ........................................................................................ 9, 11
Maryland Uniform Transfer to Minors Act ("UTMA") ............................................................................ 6
Maryland Uniform Transfers to Minors Act ............................................................................................ 3
Maryland Uniform Transfers to Minors Act. ........................................................................................... 4
Md. Estate Article §13–214 ..................................................................................................................... 9
Md. Estate Article §13–216(a), ............................................................................................................. 10

## Rules

Bankr.Rule 7056 ....................................................................................................................................... 7
Bankruptcy Rule 7056 .............................................................................................................................. 7
Fed.R.Civ.P. 56(c), ................................................................................................................................... 7
Fed.R.Civ.P. 56(c). ................................................................................................................................... 7
Fed.R.Civ.P. 56(e) .................................................................................................................................... 7

IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF MARYLAND
**Baltimore Division**

| | | |
|---|---|---|
| IN RE: | * | Chapter 7 |
| DAMOND DURANT | | |
| SHARAE DURANT | | **Case No.: 17-20232** |
| **Debtors'** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| DAMOND DURANT, JR. | * | |
| **Plaintiff** | | |
| Vs. | * | Adver No.: 17−00350 |
| DAMOND T. DURANT, SR. | * | |
| **Defendant** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Damond Durant, Jr., ("Plaintiff" or "Damond"), by his undersigned counsel, hereby file this Memorandum in Support of his Motion for Summary Judgment and states:

### I.     PRELIMINARY STATEMENT

On February 17, 2016, (the "Hearing Date"), The Honorable Judge Jeffrey M. Geller, ("Judge Geller") of the Circuit Court for Baltimore City, conducted an evidentiary hearing to determine damages in the case of ***Damond Durant, Jr., vs. Damond Durant, Sr***., Case No. 24C15000246. The following facts were accepted by Judge Geller in support of his February 17, 2016, Judgement against the Defendant. **(See Exhibit A- Transcript of Proceeding)**

### II.     STATEMENT OF UNDISPUTED FACTS

3

Plaintiff's grandmother was Janice Denise Montgomery. Ms. Montgomery passed away in 2007, when Damond was 14 years old. Ms. Montgomery's Last Will and Testament, among other things, bequeathed to Damond thirty percent (30%) of the Residuary Estate (that is, the net estate after payment of funeral expenses, debts, expenses of administering the estate, and other specific bequests). Ms. Montgomery's Last Will and Testament further provided that, because Damond was not 21 years of age when she passed, his share was to be distributed pursuant to the Maryland Uniform Transfers to Minors Act to a custodian selected in the sole and absolute discretion of Ms. Montgomery's Personal Representative, and that such custodian was to administer Damond's inheritance in accordance with the requirements of the Maryland Uniform Transfers to Minors Act until Damond attained the age of 21. Ms. Montgomery's Personal Representative appointed Defendant, who is Damond's natural father and with whom Damond lived, to serve as the custodian of Damond's inheritance. Defendant accepted his appointment. On February 28, 2008, Ms. Montgomery's Personal Representative sent a check payable to Defendant "as custodian for Damond T. Durant, Jr." in the amount of $67,751.60, as an interim distribution from Ms. Montgomery's estate. Defendant accepted and deposited that check as Damond's custodian. On September 2, 2008, Ms. Montgomery's Personal Representative sent a check payable to Defendant "as custodian for Damond T. Durant, Jr." in the amount of $8,053.23, as the final distribution from Ms. Montgomery's estate. Defendant accepted and deposited that check as Damond's custodian.

Defendant did not administer Damond's inheritance under the terms of the Maryland Uniform Transfers to Minors Act. Instead, Defendant used Damond's inheritance to fund Defendant's and his girlfriend's lifestyle including, by way of example only, taking lavish trips to Puerto Rico and the Bahamas. When Damond turned 21, his father — Defendant —

4

informed Damond that he had spent Damond's inheritance on himself and that Damond should "do what [you] need[] to do." Defendant's actions have caused injury to Damond including the loss of his inheritance, the inability to afford an apartment, the inability to afford enrolling in college, and extreme emotional distress.

Defendant's actions, which amount to no less than criminal theft, were malicious, deliberate, gross, and wanton conduct that demonstrates that Defendant was motivated by evil motive, intent to injure, ill will, and fraudulent intent. defendant falsely asserted to Damond and others that Defendant would accept Damond's inheritance as Damond's custodian and administer the bequest in accordance with the Maryland Uniform Transfers to Minors Act.

At the time the Defendant made the misrepresentations that he would act in a custodial capacity, he knew that those misrepresentations were false.  Defendant had no intention of caring for Damond's property as his custodian. Defendant falsely represented that he would act as Damond's custodian, for the purpose of defrauding Damond.

Damond justifiably relied on Defendant — his father — to act as custodian and safeguard his inheritance. Instead, Defendant stole Damond's inheritance and used it for his own selfish purposes, causing Damond to suffer damages. Defendant's actions were outrageous, amounted to criminal theft, and were malicious, deliberate, gross, and wanton conduct that demonstrates Defendant's evil motive, intent to injure, ill will, and fraud. Defendant accepted Damond's bequest as Damond's custodian and, with it, accepted certain fiduciary duties.  Among them were the duties to display complete loyalty to Damond's interests and the duty to exclude all selfish interest.

Defendant violated his fiduciary duties to Damond by stealing Damond's inheritance and using it for his own selfish purposes. Defendant's actions were outrageous, amounted to

5

criminal theft, and were malicious, deliberate, gross, and wanton conduct that demonstrates Defendant's evil motive, intent to injure, ill will, and fraud. Defendant intentionally took Damond's personal property for his own use, forever depriving Damond of the use and enjoyment of that property, without Damond's permission or justification. That personal property was comprised of specific segregated or identifiable funds, which are traceable. Defendant's actions were outrageous, amounted to criminal theft, and were malicious, deliberate, gross, and wanton conduct that demonstrates Defendant's evil motive, intent to injure, ill will, and fraud.  **See Exhibits' B and C**

### III.     JUDGE GELLER'S FINDINGS OF FACT

The Court found that the Defendant failed to appear in the proceedings, having been fully given notice of the hearing. **(Trans. H-37 1:5)**

The Court found that Defendant had an obligation to protect the Plaintiff and that the Defendant stole Plaintiff's inheritance. The court also found Plaintiff story to be "Shocking" and "Heartbreaking". **(Trans. H-37 6:15)**

The Court found that compensatory damages were appropriate and that the Plaintiff have met his burden with respect to the underlying claims. **(Trans. H-37 16:19)**

The Court entered judgment for compensatory damages in the amount of $75,804.83. The Court further found that the monies that the Defendant was entrusted to hold for the Plaintiff should have been available to Plaintiff when he was six (16) teen years old. **(Trans. H-38 3:18)**

The Court found that Maryland Estates and Trust Article 13-214 applicable to the Defendant's fiduciary duty. The Court further found that the Maryland Uniform Transfer to Minors Act ("UTMA") was also applicable to Defendant. (**Trans. H-38 19:25**)

Having heard testimony from the Plaintiff, the Court also awarded Plaintiff non-economic damages in the amount of $70,000.00. (**Trans. H-39 7:12**)

The Court found that punitive damages were appropriate against the Defendant, because the Defendant's conduct was not only heartbreaking, it was reprehensible and disgusting (**Trans. H-39 13:18**)

The Court found that the Defendant made repeated false statements, knowing that the statements were false. The Court also found that the Defendant had dissipated Plaintiff's inheritance for his own personal gain. The Court found by clear and convincing evidence, that there was actual malice, that the Defendant knew what he was doing. The Court found it especially troubling that the Defendant was a police officer. (**Trans. H-39 19:25**) (**Trans. H-40, 1**)

The Court found that the Defendant would have an ability to pay and that he should be subject to a "substantial" punitive damage award to discourage the type of conduct and to discourage the same conduct from others. (**Trans. H-40 2:7**)

The Court found that treble punitive damages in the amount of $227,414.49, were appropriate in light of the Defendant's conduct. (**Trans. H-40 8:15**)

The Court entered judgment accordingly for $75,804.83, in compensatory damages, $70,000.00 in non-economic damages and punitive damages in the amount of $227,414.49. The Court entered judgment for $373,219.32, plus $36,014.11 in-pre-judgement interest and post judgment interest at the legal rate of 10%. (**Trans. H-40 20:23**) (**Trans. H-41, 1:5**) **and Exhibit D and F**

## IV. STANDARD OF REVIEW

Pursuant to Fed.R.Civ.P. 56(c), made applicable by Bankruptcy Rule 7056, summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and

admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). See *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In determining the facts for summary judgment purposes, the court may rely on affidavits made with personal knowledge that set forth specific facts otherwise admissible in evidence and sworn or certified copies of papers attached to such affidavits. Fed.R.Civ.P. 56(e), made applicable by Bankr.Rule 7056. When a motion for summary judgment is made and supported by affidavits or other evidence, "an adverse party may not rest upon mere allegations or denials ..." Id. While the court must construe all inferences in favor of the non-moving party, *Anderson v. Liberty Lobby, Inc*.,477 U.S. at 255, 106 S.Ct. at 2513-14, the court is bound by factual determinations made in prior actions where collateral estoppel applies. *Allen v. McCurry*, 449 U.S. 90, 94-95, 101 S.Ct. 411, 414-15, 66 L.Ed.2d 308 (1980).

## V.   ARGUMENT

### a) The issues in this case have already been decided and this court should issue judgment accordingly.

Principles of collateral estoppel are applicable in dischargeability proceedings in bankruptcy. *Grogan v. Garner*, 498 U.S. 279, 284 & n. 11 (1991). "In determining the preclusive effect of a state-court judgment, the federal courts must, as a matter of full faith and credit, apply the forum state's law of collateral estoppel." In re *McNallen*, 62 F.3d 619, 624 (4th Cir. 1995). It is without dispute that Judge Geller made findings with respect to the Defendant's conduct in handling the Plaintiff's inheritance. Those findings must be provided preclusive effect in these proceedings. The 4th Circuit has also held that the determination of whether or not a state court default judgment is entitled to preclusive effect is based on the law of the state. See *Sartin v. Macek,* 535 F. 3d 284 (4th Cir. 2008) (finding

that When a creditor has reduced a claim to judgment in a state court prior to bankruptcy, the bankruptcy court generally "must give the same preclusive effect to [the] state court judgment as the forum that rendered the judgment would have given it). The Court of Appeals of Maryland in *Porter Hayden Co. v. Bullinger*, 350 Md. 452 (1998), found that a default judgment can and is given preclusive effect.

As evident in the transcript of the lower court proceedings, Judge Geller acted as the trier of fact, as to the compensatory, economic and punitive damage awards.

### b)  The Circuit Court Judgment is non-dischargeable in its entirety.

Under § 523(a)(4) of the Bankruptcy Code, a discharge granted to an individual Chapter 7 debtor does not discharge a debt for fraud or defalcation while acting as a fiduciary. Recently in *Fleming v. Gordon* (In re Gordon), 491 B.R. 691 (Bankr. D. Md. 2013), Judge Keir explained that a creditor asserting such a nondischargeability claim must prove: "(1) the establishment of an express trust regarding the funds; (2) that the debtor acted in a fiduciary capacity; and (3) the debt is based upon the debtor's fraud or defalcation while acting as a fiduciary." Id. at 697 (citing Pahlavi, 113 F.3d at 20).

It is well settled that for purposes of § 523(a)(4), the term "fraud" means "positive fraud, or fraud in fact, involving moral turpitude or intentional wrong." *Neal v. Clark*, 95 U.S. 704, 709 (1877). Likewise, it is now also well settled that in the context of this statute that the term "defalcation" requires a finding of at least "an intentional wrong" or in the absence of intentional wrongdoing, a finding that "the fiduciary 'consciously disregards' (or is willfully blind to) 'a substantial and unjustifiable risk' that his conduct will turn out to violate a fiduciary duty."

### i.  The Estate of Janice Montgomery Created a Trust for the Plaintiff

9

The Default Judgment established that a trust for Plaintiff had been created by the Estate of Janice Montgomery. **See Exhibit B. See also** (**Trans. H-7 19:21**). Plaintiff has met his burden under the first prong of the *Fleming* test.

### ii. **Judge Geller found that Defendant had Fiduciary Duty to Plaintiff**

Judge Geller found that the Defendant was acting in a fiduciary capacity pursuant to Maryland Estates and Trust Article §13–214 and the Maryland Uniform Transfer to Minors Act, when he illegally converted funds entrusted to him on behalf of the Plaintiff to his own personal benefit.

Md. Estate Article §13–214, defines duties of a guardian:

(a)  A guardian may distribute or disburse property without court authorization or confirmation in accordance with this section.

(b)  (1)  A guardian of a minor may pay or apply income and principal from the estate as needed for the clothing, support, care, protection, welfare, and education of the minor.

(2)  A guardian of a disabled person may pay or apply income and principal from the estate as needed for the clothing, support, care, protection, welfare, and rehabilitation of the disabled person. He shall give consideration to the support and care of the disabled person during the probable period of the estate and the needs of persons dependent upon the disabled person.

(3)  Income and principal also may be paid or applied for the benefit of persons legally dependent upon the minor or disabled person and, with the approval of the court, for the benefit of other persons maintained and supported in whole or in part by the disabled person prior to the appointment of a guardian.

(c) (1) When a minor attains his majority, his guardian, after meeting all prior claims and expenses of administration, shall distribute the estate to the former minor as soon as possible, unless the minor is then disabled. The distribution normally shall be in kind.

(2) If the guardian is satisfied that the disability of the disabled person has ceased or if the court has found in a proceeding under § 13–221 of this subtitle that the disability has ceased, the guardian, after meeting all prior claims and expenses of administration, shall distribute the estate to the former disabled person as soon as possible. The distribution normally shall be in kind.

(3) When a minor or disabled person dies, the guardian shall deliver to the appropriate probate court for safekeeping any will of the deceased person in his possession, pay from the estate all commissions, fees, and expenses shown on the court–approved final guardianship account, inform the personal representative or a beneficiary named in it that he has done so, and retain the balance of the estate for delivery to an appointed personal representative of the decedent or other person entitled to it.

(4) If a guardianship is terminated for reasons other than the attainment of majority, cessation of disability, or death of the protected person, the guardian shall distribute the estate in accordance with the order of the court terminating the guardianship.

Md. Estate Article §13–216(a), addresses abuse of powers of a guardian and states that:

(a) If the exercise of a power is improper, **the guardian is liable for breach of his fiduciary duty to the minor** or disabled person or to interested persons for resulting damage or loss to the same extent as a trustee of an express trust.

Maryland Uniform Transfer to Minors Act, codified as Estates and Trusts Title § 13-312, describes the duties and powers of custodians as:

(a) Control and management.- A custodian shall:

11

    (1) Take control of custodial property;

    (2) Register or record title to custodial property if appropriate; and

    (3) Collect, hold, manage, invest, and reinvest custodial property.

    (b)  Standard of care.-

    (1) Except as provided in paragraph (2) of this subsection, in dealing with custodial property:

    (i) A custodian shall observe the standard of care that would be observed by a prudent person dealing with property of another and is not limited by any other statute restricting investments by fiduciaries;

    (2) A fiduciary subject to § 15-114 of this article shall comply with that section in dealing with custodial property.

It is therefore without question that the Defendant was acting as a fiduciary for Plaintiff, thus has met his burden under the second prong in *Fleming*.

### iii.    The Plaintiff suffered a loss as a result of Defendant's Breach of Fiduciary

Judge Geller found that Plaintiff suffered emotional and actual loss. The Court awarded $70,000 to address the non-economic damages of emotional distress. (**Trans. H-8 13:14, 20:24**); (**Trans. H-30 1:5**); (**Trans. H-38 5:18**).  Plaintiff also suffered the loss of his inheritance, because the Defendant converted the funds to his own personal use. Plaintiff has met the third prong in *Fleming*.

### VI.    CONCLUSION

Plaintiff has demonstrated that he is entitled to judgment as a matter of law on his claims against the Defendant and respectfully request that this Court find the judgment non-dischargeable.

>Respectfully Submitted,
>
>/s/ Kim Parker
>_____
>Kim Parker, Esquire
>Federal Bar No.: 23894
>THE LAW OFFICES OF KIM PARKER, P.A.
>2123 Maryland Avenue
>Baltimore, Maryland 21218
>410-234-2621
>E: kp@kimparkerlaw.com

13