IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF MARYLAND
**Baltimore Division**

| | | |
|---|---|---|
| IN RE:<br>　DAMOND DURANT<br>　SHARAE DURANT<br>　　　Debtors' | *<br><br>*<br><br>* | Chapter 7<br><br>**Case No.:  17-20232** |
| *  *  *  *  *  *  * | * * * * * * | |
| DAMOND DURANT, JR.<br><br>**Plaintiff**<br><br>Vs.<br><br>DAMOND T. DURANT, SR.<br><br>**Defendant** | *<br><br>*<br><br>*<br><br>*<br><br>* | Adver No.: 17−00350 |
| *  *  *  *  *  *  * | * * * * * * | |

**TABLE OF AUTHORITES**

## Cases

, *Nunnery*, 478 F.3d at 220 ................................................................................................... 8

<u>Benner, M.D. v. Nationwide Mut. Ins. Co</u>., 93 F.3d 1228, 1234 (4th Cir.1996) .......................... 9

*Boddie v. Connecticut*, 401 U.S. 371, 378 (1971) ....................................................................... 6

*Boddie*, 401 U.S. at 378-79 ........................................................................................................... 6

Cf. Citibank, S.D., N.A. v. Savage (In re Savage), 303 B.R. 766, 772 (Bankr. D. Md. 2003) ..... 6

<u>Colandrea v. Wilde Lake Community Ass'n</u>, Inc., 761 A.2d  899 (Md. 2000) ........................... 7

*Doolin Sec. Sav. Bank, FSB v. FDIC*, 53 F.3d 1395, 1402 (4th Cir. 1995) .................................. 6

F<u>ranklin Credit Mgmt. Corp. v. Nefflen</u>, 208 Md.App. 712, 728, 57 A.3d 1015, 1024 (2012). Affmd. .... 11

Freed v. Plastic Packaging Materials, Inc., 66 F.R.D. 550, 552 (E.D. Pa. 1975). ...................... 6

<u>Glens Falls Ins. v. Amer. Oil Co</u>., 254 Md. 120 (1969) ............................................................. 10

In Re *Fleming v. McCoskey (In re McCoskey), Adv. No. 05-1267-SD, 2006 WL 5217793 * 3 (Bankr. D. Md. Feb. 21, 2006* .................................................................................................................... 10

<u>Jordan v. Moore</u>, Nos. 1:09-cv-02882-WMN; BK-07-15516; AP-07-00684 (D. Md. Mar. 16, 2010), Affmd 2011 ........................................................................................................................... 7

*Lorraine*, 241 F.R.D. at 535 .......................................................................................................... 5

<u>United Book Press, Inc. v. Maryland Composition Co., Inc</u>., 786 A.2d 1, 12 (Md.  Ct. Spec.App. 2001)... 7

## Rules

1

Fed. R. Civ. P. 56(e)(2). .................................................................................................................. 3
Maryland Rule 2-613(d) ............................................................................................................... 6
Rule 2–613(f) ................................................................................................................................ 6

**Record Reference**

Docket Entries 24-6, pages 1:2, 24-7, page 3, entries 7/2, 12/2, 14/0, 16/2, 17/0, 18/0, 19/2,20/2,
    21/1, 33/2. ............................................................................................................................. 7
Entries 24-5, pages 2:7, 24-7, page 3, entry 6/0 ........................................................................... 7
See This Court Docket Entries 24-5, page 1and 8, ...................................................................... 7
Trans. at H-8, 8:12, 13:14 and 15:16, H-9, 7:9, 14, 19:24, H-10, 3:25, H-11, 1:6. ....................... 5
Trans. H-7, 22:25, H-8, 1:4. .......................................................................................................... 5

**Exhibit**

Exhibit A .................................................................................................................................... 4
Exhibit B Docket Sheet  See 16-1 and 16-2 ................................................................................. 5

IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF MARYLAND
**Baltimore Division**

| | | |
|---|---|---|
| IN RE: | * | Chapter 7 |
| DAMOND DURANT | | |
| SHARAE DURANT | | **Case No.: 17-20232** |
| **Debtors'** | * | |
| * * * * * * * | * * * * * * | |
| DAMOND DURANT, JR. | | |
| | * | |
| **Plaintiff** | | |
| | * | Adver No.: 17−00350 |
| Vs. | | |
| | * | |
| DAMOND T. DURANT, SR. | | |
| | | |
| **Defendant** | * | |

* * * * * * * * * * * * *

**PLAINTIFF'S AMENDED REPLY IN SUPPORT OF HIS
MOTION FOR SUMMARY JUDGMENT**

NOW COMES, Damond Durant, Jr., ("Plaintiff") by his undersigned counsel and presents further argument in support of Plaintiff's Motion for Summary Judgment, and incorporates the arguments raised in his Motion and oral argument, as if herein restated for reference. In support state:

**PRELIMINARY STATEMENT**

This case is one of the most reprehensible cases of dereliction of a fiduciary in his duty to safeguard property for a vulnerable child, his child, in recent memory. The Defendant in this case, as noted in the transcript of the proceedings, is an Officer of The Court; a Police Officer with the Baltimore City Police Department (the "BCPD"). In addition to his position as a Police Officer, he is specifically assigned to the division that oversees the Consent Decree entered into

3

by the Department of Justice ("DOJ") and BCPD after it found "grave injustices" with how the BCPD were treating citizens. The BCPD mission statement[1] states that "The Baltimore Police Department is dedicated to fostering trust with community members, safeguarding life and property, and promoting public safety through enforcing the law in a fair and impartial manner. **Officers will police with integrity, dignity, honor, and respect with a commitment to ensure the highest ethical standards are maintained**".

The actions of the Defendant, as found by Judge Geller, deviated greatly from the mission outlined by the BCPD and his fiduciary obligation to safeguard the Plaintiff's property. The actions of the Defendant in converting the Plaintiff's entire inheritance for he and his wife (debtor Sharae Durant's) personal gain, as found by Judge Geller, is heart wrenching. As Judge Geller found, the Plaintiff suffered severe emotional anguish based squarely on the Defendant's actions.

The Defendant would have the Court somehow believe that he has meritorious defenses to this case, but provided no explanation on why, after being provided several opportunities to present those allege defenses, he chose to voluntarily, even after being provided an opportunity to be heard in the proceedings, to not participate. Interestingly, even after receiving the Notice of Judgements, garnishments and subsequent notices from the Court, the Defendant in his response failed to explain why he voluntarily chose not to be heard by filing a Motion to Vacate or any other post-judgment motions to correct, according to him, a manifest injustice. The Defendant allowed funds to be garnished from his paycheck for almost a year without raising any argument whatsoever.

As will be discussed below, this Court must reject the Defendant's self-serving arguments and afford Judge Geller's Judgement full faith and credit in these proceedings to

---

[1] https://www.baltimorepolice.org/about-department

prevent a manifest injustice to the Plaintiff by having to relive the events that led Judge Geller to make findings against the Defendant and awarding a substantial judgment against him.

### a) The Defendant has failed to set forth facts and evidence to demonstrate material facts in dispute.

In his preliminary statement, Defendant asserts that there are material facts in dispute, according to him, that he was never given an opportunity to be heard. The Defendant attempts to rehash facts that have already been established in Court. If the moving party makes a Motion for Summary Judgment properly, the burden shifts to the non-moving party, whose "response must … [set out specific facts showing a genuine issue for trial]." Fed. R. Civ. P. 56(e)(2). Unlike the moving party, the "opposing party may not [rely merely on allegations or denials] in its own pleadings; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. In the instant response, the Defendant failed to set forth any legal or justifiable basis to rebut Plaintiff's entitlement to summary judgment. Defendant's recite a brief version of what he alleges to have transpired, but presented no other evidence.

It is axiomatic that the opposing party must provide additional materials to successfully defend against summary judgment and those materials must include assurances to the Court that they are authentic and reliable. The Fourth Circuit Court of Appeals generally requires those opposing motions for summary judgment to submit supporting materials that are admissible at trial. *Lorraine*, 241 F.R.D. at 535 ("to be entitled to consideration on summary judgment, the evidence supporting the facts set forth by the parties must be such as would be admissible in evidence").

Furthermore, the Defendant has already admitted that he used some of Plaintiff's inheritance on motorcycles and lavish trips. See Exhibit A

5

The failure to respond to a request for admissions in a proceeding in which the nonresponding party was represented by counsel may result in a material fact being deemed to be admitted and thereby subject the party to an adverse grant of summary judgment. Cf. Citibank, S.D., N.A. v. Savage (In re Savage), 303 B.R. 766, 772 (Bankr. D. Md. 2003).

> **b) Defendant was given a fair opportunity to be heard, but chose not to appear at the hearing on damages, nor did he avail himself of the many post-judgment proceedings available to him to vacate the Default Judgment if he believed he had meritorious defenses to the underlying action.**

The Defendant has argued that he was not provided an opportunity to be heard, thus, according to Defendant, this Court should not give Judge Geller's decision collateral estoppel effect. This argument amounts to purposeful hyperbole and abstruse legal reasoning. As will be discussed *infra*, an opportunity to be heard is akin to due process; meaning that you had notice of the proceedings and was able to present any defenses. See *Doolin Sec. Sav. Bank, FSB v. FDIC*, 53 F.3d 1395, 1402 (4th Cir. 1995) ("[t]he fundamental requirement of due process is the opportunity to be heard,"). The guarantees of due process do not mean that "the defendant in every civil case [must] actually have a hearing on the merits." *Boddie v. Connecticut*, 401 U.S. 371, 378 (1971). "What the Constitution does require is an opportunity . . . granted at a meaningful time and in a meaningful manner, for a hearing appropriate to the nature of the case." Id. (internal quotations omitted). The Defendant, having been served with the proceedings, voluntarily chose not participate in the hearing, nor did he file one (1) motion to vacate the judgement. A party's failure to take advantage of that opportunity waives the right it secures. See *Boddie*, 401 U.S. at 378-79.

Moreover, as further discussed below, the Judge Geller's Judgement were premises on economic and punitive damages, not liability.

6

This Court should find Judge Nickerson's of the United States District Court of Maryland decision in <u>Jordan v. Moore,</u> Nos. 1:09-cv-02882-WMN; BK-07-15516; AP-07-00684 (D. Md. Mar. 16, 2010), Affmd 2011, instructive in this case. *Jordan* appealed this Court's granting of a Motion for Summary Judgment on similar grounds. *Jordan* raised arguments, such as those raised by the Defendant in this case, that collateral estoppel does not apply since the judgment issued below was a default judgment and he did not have a proper opportunity to be heard, thus, not actually litigated. Judge Nickerson found in *Jordan* that when a judgment is not based on the preclusive effect of the default judgment as to [l]iability, but on the preclusive effect of a Judges determination as to [p]unitive damages, [c]ollateral estoppel applies.

In the instant matter, *Judge Geller* held a hearing to determine economic and punitive damages, not liability, which is analogous to the *Jordan* decision. On January 6, 2016[2], Judge Geller issued an Order of Default for the Defendant's failure to respond and entered judgment for compensatory damages in the amount of $75,834, but kept the case open to hear Plaintiff's argument on economic and punitive damages. Trans. H-7, 22:25, H-8, 1:4. Counsel for the Plaintiff requested that the court determine damages, not liability. See also Trans. at H-8, 8:12, 13:14 and 15:16, H-9, 7:9, 14, 19:24, H-10, 3:25, H-11, 1:6.

Judge Nickerson, in *Jordan*, found that Judge Gordon's characterization of the Circuit Court proceedings as "Finding of Facts" appropriate. Like the *Jordan* decision, Judge Geller was acting as a fact finder, rending legal conclusions. Judge Nickerson also found that:

> "In Maryland,"[i]n determining whether an issue has been actually litigated, courts may look beyond the judgment to examine the pleadings and evidence presented in the prior case." <u>United Book Press, Inc. v. Maryland Composition Co., Inc</u>., 786 A.2d 1, 12 (Md. Ct. Spec.App. 2001) (citing <u>Colandrea v. Wilde Lake Community Ass'n</u>, Inc., 761 A.2d 899 (Md. 2000) ("'[F]or the doctrine of collateral estoppel to apply, the probable fact-finding that undergirds the judgment used to estop must be scrutinized to determine if

---

[2] Exhibit B Docket Sheet  See 16-1 and 16-2

the issues raised in that proceeding were actually litigated, or facts necessary to resolve the pertinent issues were adjudicated in that action.'") (emphasis added))".

See also *Nunnery*, 478 F.3d at 220 where ("[The Supreme Court] has ruled that a bankruptcy court may look behind the record of the underlying judgment to determine if the debtor indeed obtained the debt through fraudulent means. The record below has been filed in support of Plaintiff's Motion for Summary Judgement.

Judge Nickerson found, *in Jordan*, that the lower court properly determined the punitive damage award as a finder of fact and defendant's conduct "[was] sufficiently deliberate for the purpose of causing the specific injury suffered by the plaintiff so as to determine that his intent to cause that injury is conclusively established as a fact."

Moreover, it is important to note that the Defendant had an opportunity to file a Motion to Vacate the Default Judgment pursuant to Maryland Rule 2-613(d)[3], but chose not to avail himself of those opportunities. In Maryland, if a Defendant fails to file a motion to vacate an order of default, Rule 2–613(f) provides that:

> "[T]he court, upon request, may enter a judgment by default that includes a determination as to liability and all relief sought, if it is satisfied (1) that it has jurisdiction to enter the judgment and (2) that the notice required by section (c) of this Rule was mailed. If, in order to enable the court to enter judgment, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any matter, the court may rely on affidavits, conduct hearings, or order references as appropriate, and, if requested, shall preserve to the plaintiff the right of trial by jury".

Had the Defendant filed a Motion to Vacate the Default, which the record is clear he received, he could have presented any legal argument to support the nonsensical position he

---

[3] The defendant may move to vacate the order of default within 30 days after its entry. The motion shall state the reasons for the failure to plead and the legal and factual basis for the defense to the claim.

intends to espouse in this court[4]. In the instant case, the Defendant had many opportunities to be heard as outlined below:

    *a)* the Defendant received actual notice of the Complaint; *See This Court Docket Entries 24-5, pages 2:7, 24-7, page 3, entry 6/0.*

    b) The Defendant received notices from the Clerk's Office; *See This Court Docket Entries 24-6, pages 1:2, 24-7, page 3, entries 7/2, 12/2, 14/0, 16/2, 17/0, 18/0, 19/2,20/2, 21/1, 33/2*. It is also important to note that the court docket does not reflect that any of the notices were returned. It is axiomatic under Maryland law, the presumption of delivery and receipt of mail arises when material is mailed See <u>Benner, M.D. v. Nationwide Mut. Ins. Co</u>., 93 F.3d 1228, 1234 (4th Cir.1996).

    *c)* The Defendant received notices from the Plaintiff's Counsel; *See This Court Docket Entries 24-5, page 1and 8,*

    d) The Defendant had an opportunity to appear at the hearings; *See This Court Docket Entries 24-6, pages 1:2, 24-7, page 3, entries 7/2, 12/2, 14/0, 16/2, 17/0, 18/0, 19/2,20/2, 21/1, 33/2.*

    e) The Defendant had an opportunity to file a Motion to Vacate the Judgment;

    f) The Defendant had an opportunity to file post-judgment motions;

    g) The Defendant had an opportunity to appeal Judge Geller's ruling**.**

This Court has found where a Defendant had an opportunity to be heard and [v]oluntarily choses not to, collateral estoppel will apply to default judgment. See *Bernstein*, 197 B.R. at 480

---

[4] At the hearing on Plaintiff's Motion for Summary Judgment, Counsel for the Defendant argued that the Defendant gave the Plaintiff $20,000 for a vehicle, I suppose in support of an argument that he has meritorious defenses to this action. It is interesting to note that the Defendant received over $70,000, as evident by the record, thus, even *assuming arguendo* that he did provide the Plaintiff with $20,000, which is expressly denied, this argument does not support his position that he did not willfully dissipate the Plaintiff's inheritance as Judge Geller found by clear and convincing evidence. Also, this notion should be rejected in light of the Admissions in the underlying proceeding.

(holding that it would be unfair to permit a party to avoid the preclusive effect of an anticipated adverse decision merely by not appearing for trial or by not having a factual defense to present). See also <u>Glens Falls Ins. v. Amer. Oil Co</u>., 254 Md. 120 (1969) (holding that Maryland courts have explicitly held that if issues necessary to a default judgment [c]ould have been litigated, then an adversely effected party is precluded from relitigating them).

In Re <u>Fleming v. McCoskey (In re McCoskey), Adv. No. 05-1267-SD, 2006 WL 5217793 * 3 (Bankr. D. Md. Feb. 21, 2006),</u> Judge Derby of this Court found that a Defendant's failure to motion the court to vacate the default, fatal to his argument that he did not have an opportunity to be heard(although a default order was entered against him, the Defendant had thirty days to move to vacate the default order. Further, *in Fleming*, the Plaintiff, at a hearing, put forth evidence that the Court weighed when determining whether damages were appropriate). Judge Derby also found that *McCoskey* could have "at any time after receiving notice participated in the case". Judge Derby also found:

> "While the issues were presented at a damages hearing in front of a judge rather than at trial in front of a jury, "It would be unfair to permit a party to avoid the preclusive effect of an anticipated adverse decision merely by not appearing at the hearing or by not having a factual defense to present".

See also in IN RE *Ogden v. GT Contractiong Corp (In re Ogden), Adv. No. 14-00005, 2015 (Bankr. ED. NC.* Dec. 21, 2015), also relying on the *McCoskey* opinion, finding that "Default Judgment "is still final in respect of the question of the liability of the party against whom it is obtained." Id. (citing *Himes v. Day, 254 Md. 197, 206 (1969).* "Like every other judgment, it is conclusive of every fact necessary to uphold it." Id. (citing <u>Heyward v. Sanner</u>, 86 Md. 19, 21 (1897)).

It is therefore established in this court, that failure to file a Motion to Vacate a Judgment is fatal to Defendant's collateral estoppel argument. Moreover, the Maryland Court of Appeals has continued to find that Default Judgments amount to an Admission of Liability. ." F<u>ranklin Credit Mgmt. Corp. v. Nefflen</u>, 208 Md.App. 712, 728, 57 A.3d 1015, 1024 (2012). Affmd. (concluding that the judge did not abuse her discretion when she entered the default judgments, reasoning that, in Maryland there is no "prerequisite to the entry of a default judgment, in the absence of any pleadings from the defaulting party,. . . that the trial court make a determination as to liability."

The *Flemming* and *Jordan* decisions are good law and have not been overturned on appeal. The Court should find that collateral estoppel, in light of the circumstances in this case are applicable to these proceedings. This court should therefore enter judgment finding the Judgement non-dischargeable.

## Conclusion

For the foregoing reasons and those that may be apparent to the Court, Plaintiff respectfully request that this Court grant Summary Judgment in his favor and for such other and further relief as may be deemed just and proper.

                                              Respectfully Submitted,

                                              */s/ Kim Parker*
                                              _____
                                              Kim Parker, Esquire
                                              Federal Bar No.: 23894
                                              THE LAW OFFICES OF KIM PARKER, P.A.
                                              2123 Maryland Avenue
                                              Baltimore, Maryland 21218
                                              410-234-2621
                                              E: kp@kimparkerlaw.com

## **CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on this 11th day of March 2018, Amended Reply was served on Jeffery Sirody, Esq., Counsel for Defendant via the Court's ECF Filing system.

                                               */s/ Kim Parker*

                                               _____

                                               **KIM PARKER**