

**MICHELLE M. HARNER**
**U.S. BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Baltimore

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Damond and Sharae Durant, | * | Case No. 17-20232-MMH |
| | * | |
| Debtors. | * | Chapter 7 |
| | * | |
| * * * * * * * | * * * * * * | |
| | * | |
| Damond Durant, Jr., | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | Adv. No. 17-00350-MMH |
| | * | |
| Damond Durant, Sr., | * | |
| | * | |
| Defendant. | * | |
| | * | |
| * * * * * * * | * * * * * * | |

### <u>MEMORANDUM OPINION</u>

This matter requires the Court to consider how long a defendant may wait to raise
defenses to an action, particularly where there appears to be no issues concerning notice and due
process in the original proceeding. More specifically, may a defendant—with knowledge of a
state court proceeding against him—take no action in that proceeding, but still contest the
findings of the state court in a subsequent bankruptcy case? Does it matter that, in electing not to
participate in the state court proceeding, the defendant allowed a default judgment to be entered,

an evidentiary damages hearing to be held, and a final judgment on damages to be entered with no appeal or challenge?

The Court believes that it does matter. Although the Court appreciates that a defendant may desire to take a different strategic approach in a bankruptcy case and may even have valid defenses to the asserted claims, a defendant may not sit on his rights or wait to challenge the claims in what he may perceive to be a more favorable venue. Such an approach prejudices other parties to the original proceeding and contravenes important policy objectives (including finality and judicial economy) that underlie the doctrine of res judicata. Accordingly, as more fully explained below, the Court finds that the particular facts of this adversary proceeding satisfy the doctrine of issue preclusion under Maryland law and that grounds exist to grant the plaintiff's motion for summary judgment.

## I.      Relevant Background

Damond Durant, Sr. (the "Defendant") and Sharae Durant (collectively with the Defendant, the "Debtors") filed this chapter 7 case on July 28, 2017. The Debtors list approximately $452,146.00 in debt on the schedules to their chapter 7 petition. The overwhelming majority of this debt relates to a single judgment entered against the Defendant by the Circuit Court for Baltimore City on April 12, 2016 (the "State Court Judgment"). *See* Petition, Case No. 17-20232, ECF 1, 23; Ex. D, Am. Mot. Summ. J., ECF 24-6. This adversary proceeding concerns the dischargeability of the State Court Judgment under section 523(a)(4) of the U.S. Bankruptcy Code.[1]

The State Court Judgment is based on the Defendant's conduct with respect to certain inheritance funds in the amount of $75,803.83 (the "Inheritance Funds") belonging to the

---

[1] 11 U.S.C. §§ 101 et seq. (the "Code").

Defendant's son, Damon Durant, Jr. (the "Plaintiff"). *See* Am. Mot. Summ. J. at 6–7, ECF 24; *see also* Transcript of Feb. 17, 2016 State Court Hearing ("State Court Tr.") 36–41, ECF 24-3.[2] The Plaintiff's late grandmother left him the Inheritance Funds in her Last Will and Testament (the "Will"). *See* Complaint, Ex. B, Am. Summ. J. (the "Complaint") at 2–3, ECF 24-4. Under the terms of the Will, the Defendant was given custody of the Inheritance Funds because the Plaintiff was still a minor at the time. *Id.* at 3. When the Plaintiff turned 21 years old, the Defendant gave him $100.00. *Id.* at 4; State Court Tr. 19–20, ECF 24-3. According to the Plaintiff, the Defendant told him that the remainder of the Inheritance Funds was gone and that he should do whatever he needed to do. *See* Complaint at 4; State Court Tr. 19–20, ECF 24-3.

The Plaintiff initiated litigation against the Defendant in the Circuit Court for Baltimore City (the "State Court") on January 16, 2015. The Plaintiff's complaint against the Defendant contained four counts sounding in fraud/intentional theft, breach of fiduciary duties, conversion, and unjust enrichment. *See* Complaint, ECF 24-4. The complaint sought actual damages, attorneys' fees, and other appropriate relief. *Id.* The State Court's docket indicates that the Writ of Summons was served on the Defendant on March 19, 2015, but that no Answer or other response was filed by the Defendant.[3] *See* Ex. F., Am. Mot. Summ. J., ECF 24-7. Accordingly, the State Court entered a default judgment against the Defendant on September 29, 2015. *See id.*

The State Court then held an evidentiary hearing on damages relating to the default judgment. Only the Plaintiff and his counsel appeared at the damages hearing. *See* State Court

---

[2] A court may take judicial notice of official transcripts from other proceedings. *See, e.g., King v. Nalley*, 2017 WL 4221062, *2 (D. Md. Sept. 21, 2017) (taking judicial notice of official transcripts from *voir dire* proceedings and separate criminal case and citing relevant Fourth Circuit authority on issue). The state transcript attached as an exhibit to the Plaintiff's Amended Motion for Summary Judgment is certified and no party has challenged it. *See* State Court Tr. 42, ECF 24-3.

[3] The Court may take judicial notice of court dockets in other proceedings, including state court proceedings. *See, e.g., Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 312 n. 1 (D. Md. 2014), *aff'd*, 584 F. Appx. 135 (4th Cir. 2014); *see also Strickland-Lucas v. Citibank, N.A.*, 256 F. Supp.3d 616, 620 n. 3 (D. Md. 2017) (explaining judicial notice generally, including judicial notice of docket entries).

Tr. 37, ECF 24-3. The State Court proceeded to hear evidence on the damages request, including

the Plaintiff's testimony. The Plaintiff testified that the Defendant would not allow him to use

any of the Inheritance Funds until he turned 21 years old, but then when he requested the money,

the Defendant told him that all of the money was gone. *See id.* at 14–16, 18–20. Although the

Plaintiff testified that he did not know what happened to the money, he observed certain changes

in the Defendant's spending habits, including the purchase of a motorcycle shortly after the

Defendant received the Inheritance Funds, and various vacations that the Defendant and his wife

took after that time. *See id.* The State Court made several findings and observations that are

relevant to this adversary proceeding, including:

- "[The Defendant] has failed to appear having been given notice of today's hearing, having failed to respond to any process or notices from this Court." *Id.* at 37.

- "I've looked at the conduct of [the Defendant] and I find it to be, as I said at the outset, aside from being heartbreaking to hear that somebody's been treated like this, it's reprehensible." *Id.* at 39.

- "The fact that [the Defendant] made repeated statements to [the Plaintiff] knowing full well that they were false, that he couldn't touch the money while he was spending it on himself, to me, clearly shows, by clear and convincing evidence, that there was actual malice, that [the Defendant] knew exactly what he was doing." *Id.*

After a full review of the record, the State Court entered the State Court Judgment, awarding the

Plaintiff $75,804.83 in actual damages ("Actual Damages"), $70,000.00 in non-economic

damages ("Non-Economic Damages"), and $227,414.49 in punitive damages ("Punitive

Damages"). *See* Ex. D, Am. Mot. Summ. J., ECF 24-6.

The State Court Judgment was indexed and recorded on April 12, 2016. *See* Ex. F., Am.

Mot. Summ. J., ECF 24-7. Also around this time, the Plaintiff garnished the Defendant's wages

and was in the process of discovery and other efforts to enforce and collect on the judgment. *Id.*

The Defendant filed a Suggestion of Bankruptcy in the State Court on August 23, 2017. *Id*. The State Court then entered an order providing that the "action [was] STAYED as to all claims against [the Defendant] and the proceedings deferred to the Bankruptcy Court in accordance with Section 362 of Title 11 of the United States Code." *Id*.

Following the commencement of this chapter 7 case, the Plaintiff initiated this adversary proceeding by filing a complaint against the Defendant under section 523(a)(4) of the Code (the "Adversary Complaint"). ECF 1. The Adversary Complaint was timely filed in accordance with section 523(c) and Bankruptcy Rule 4007(c).[4] By the Adversary Complaint, the Plaintiff seeks a determination that the entire amount of the State Court Judgment—i.e., $373,219.32, plus post-judgment interest and cost—is nondischargeable in this chapter 7 case under section 523(a)(4) of the Code. The Defendant filed an Answer to the Adversary Complaint on December 18, 2017, asserting, among other things, that the State Court Judgment, which was a judgment entered by default, is not binding in this proceeding. ECF 23.

Shortly thereafter, the Plaintiff filed his Amended Motion for Summary Judgment (the "Motion"). ECF 24. By the Motion, the Plaintiff posits that the State Court's findings of fact made during the evidentiary hearing on the damages award memorialized by the State Court Judgment are binding on this Court under the doctrine of issue preclusion. The Defendant filed an Objection to the Motion, arguing that the State Court Judgment has no res judicata effect (under either the claim or issue preclusion doctrine) because it was a default judgment. ECF 29.

---

[4] The Defendant filed a motion to dismiss because the Plaintiff failed to serve the original summons in accordance with Bankruptcy Rule 7004. ECF 14. The Plaintiff then filed a request to reissue the summons and an affidavit of service. ECF 15, 19. The Court denied the motion to dismiss, and the Defendant thereafter filed his answer. ECF 21, 23.

The Court held a hearing on the Motion and the related pleadings on February 22, 2018 (the "Hearing").[5] At the Court's invitation, both parties filed post-hearing briefs. ECF 37, 38.

## II.    Jurisdiction and Legal Standards

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and Local Rule 402 of the United States District Court for the District of Maryland. This proceeding is a "core proceeding" under 28 U.S.C. § 157(b)(2).

Rule 56 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Bankruptcy Rule 7056, governs the Motion for Partial Summary Judgment. A moving party may be entitled to judgment as a matter of law under Civil Rule 56 in the absence of any genuine issue of material fact. Fed. R. Civ. P. 56. *See Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). *See also Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016) (discussing standards for summary judgment). "When a party has submitted sufficient evidence to support its request for summary judgment, the burden shifts to the nonmoving party to show that there are genuine issues of material fact." *Emmett*, 532 F.3d at 297. Courts generally will grant summary judgment "unless a reasonable jury could return a verdict for the nonmoving party on the evidence presented." *Stanley Martin Cos. v. Universal Forest Prods. Schoffner LLC*, 396 F. Supp. 2d 606, 614 (D. Md. 2005) (citations omitted).

A court must view the evidence on summary judgment in the light most favorable to the nonmoving party and "draw all justifiable inferences" in its favor, "including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker*

---

[5] The Plaintiff filed a request that the Court take judicial notice of its Order regarding the United States Trustee's motion in limine concerning certain requests for admissions filed in the main bankruptcy case. ECF 34; ECF 30 in Case No. 17-20232. Because the Court resolves the Motion under the doctrine of issue preclusion, it does not address the Plaintiff's request in the context of this motion and will deny that request without prejudice as moot.

*Magazine*, 501 U.S. 496, 520 (1991) (citations omitted). Under Civil Rule 56, a party may support assertions made in a motion for summary judgment by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers or other materials.[6] Fed. R. Civ. P. 56(c). A court has some flexibility in the kinds of evidence that it can consider in resolving a motion for summary judgment. *See, e.g., Humphreys & Partners Architects*, 790 F.3d 532, 538–539 (4th Cir. 2015).

The Defendant apparently disputes the factual allegations underlying the State Court Judgment. Those factual issues are not, however, before the Court at this time. Rather, the issue before the Court concerns the import of the State Court's factual determinations and whether the parties and this Court are bound by those determinations in this adversary proceeding. The Court must resolve the Motion based on the legal doctrine of issue preclusion under Maryland law. Accordingly, the resolution of the legal issue presented by the Motion is appropriate and warranted under Civil Rule 56.

### III.    Analysis

The bankruptcy discharge is a hallmark of U.S. bankruptcy law. It provides a debtor with that coveted fresh start, and it is one of the primary policy objectives underlying the Code. *See, e.g., Grogan v. Garner*, 498 U.S. 279, 286 (1991). As such, courts generally interpret the exceptions to discharge set forth in section 523 of the Code narrowly, and the objecting creditor bears the burden of proof. *See, e.g., Hoak v. Hoak (In re Hoak)*, 2017 WL 83351, at *2 (Bankr.

---

[6] The Plaintiff attached the following materials as exhibits in support of the Motion: the State Court Transcript, the State Court Complaint (and related filings), the State Court Judgment, and the State Court Docket. In addition, the Court takes judicial notice of, and references where appropriate or useful, certain other materials. *See supra* notes 2, 3.

N.D. W. Va. 2017) (citing *Foley & Lardner v. Biondo (In re Biondo)*, 180 F.3d 126, 130 (4th Cir. 1999)).

In this proceeding, the Plaintiff alleges that the State Court Judgment is a nondischargeable debt in the Defendant's chapter 7 case under section 523(a)(4) of the Code. That section provides, in relevant part, that "[a] discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt … for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny …." 11 U.S.C. § 523(a)(4). The Plaintiff argues that the alleged conduct of the Defendant in connection with the Inheritance Funds, which underlies the State Court Judgment, qualifies as fraud or defalcation while acting in a fiduciary capacity under section 523(a)(4). The Court must consider the standards for assessing conduct under section 523 of the Code and the effect, if any, of the State Court Judgment on that assessment to resolve the Motion.

## A.  Standard for Reviewing Debts Under Section 523(a)(4)

Courts evaluating claims under section 523(a)(4) of the Code generally require proof of a traditional fiduciary relationship and evidence of fraud or defalcation by the debtor while acting a fiduciary capacity. Notably, section 523(a)(4) is satisfied with evidence of either fraud or defalcation. For purposes of section 523(a)(4), fraud means "positive fraud, or fraud in fact, involving moral turpitude or intentional wrong." *Neal v. Clark*, 95 U.S. 704, 709 (1877); *see also Kovens v. Goodwich (In re Goodwich)*, 517 B.R. 572, 583–584 (Bankr. D. Md. 2014). Similarly, defalcation means "'an intentional wrong'" or "a finding that 'the fiduciary "consciously disregards" (or is willfully blind to) "a substantial and unjustifiable risk" that his conduct will turn out to violate a fiduciary duty.'" *Goodwich*, 517 B.R. at 583–584 (quoting *Bullock v. BankChampaign*, 596 U.S. 267, 274 (2013)). The creditor objecting to the dischargeability of the

debt must establish each element of section 523(a)(4) by a preponderance of the evidence. *See, e.g., Grogan*, 498 U.S. at 291.

### B.  Doctrine of Issue Preclusion Under Maryland Law

The parties agree that the doctrine of issue preclusion applies in the context of nondischargeability proceedings under section 523 of the Code. *See, e.g., Grogan*, 498 U.S. at 284–285. They do not agree, however, concerning the preclusive effect, if any, of the State Court Judgment. This dispute concerns not only whether the State Court Judgment rests upon evidentiary findings sufficient to meet the Plaintiff's burden under section 523(a)(4), but also whether, in the first instance, a default judgment can bind the Defendant in this proceeding. The Court addresses the latter question first, as it could be determinative in this proceeding.

The United States Court of Appeals for the Fourth Circuit has instructed that "the full faith and credit statute requires a federal court to apply state res judicata law in determining the preclusive effect of a state court judgment." *Meindl v. Genesys Pac. Tech., Inc. (In re Genesys Data Tech., Inc.)*, 204 F.3d 124, 129 (4th Cir. 2000) (citations omitted); *see also Shirazi v. Peninsula Internal Medicine, LLC*, 2010 WL 5173028, at *2 (D. Md. Dec. 14, 2010) (citing *Meindl* for same proposition). The term "res judicata" often is invoked to reference two separate but related concepts—that of claim preclusion and issue preclusion. Some jurisdictions draw a stark distinction between these two concepts and use the term "res judicata" to mean only claim preclusion. *See, e.g., Colandrea v. Wilde Lake Community Ass'n, Inc*., 761 A.2d 899, 909 (Md. 2000) ("Collateral estoppel is concerned with the issue implications of the earlier litigation of a different case, while *res judicata* is concerned with the legal consequences of a judgment entered earlier in the same cause.").

"Under Maryland law, the elements of res judicata, or claim preclusion, are: (1) that the parties in the present litigation are the same or in privity with the parties to the earlier dispute; (2) that the claim presented in the current action is identical to the one determined in the prior adjudication; and, (3) that there has been a final judgment on the merits. … If a final judgment exists as to a controversy between parties, those parties and their privies are barred from relitigating any claim upon which the judgment is based." *Anne Arundel Cty. Bd. of Educ. v. Norville*, 887 A.2d 1029, 1037 (Md. 2005) (citations omitted). Maryland law also recognizes issue preclusion, or collateral estoppel, "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Janes v. State*, 711 A.2d 1319, 1324 (Md. 1998) (citations omitted). The Motion and this adversary proceeding involve only the doctrine of issue preclusion under Maryland law.

As noted above, the State Court Judgment is a default judgment that was entered by the State Court without any participation by the Defendant in the litigation. Some Maryland case law suggests that the preclusive effect of a default judgment is limited. *See, e.g., Jordan v. Moore*, 2010 WL 997065, at *5 (D. Md. Mar. 16, 2010) (reviewing the different treatment accorded default judgments under Maryland law); *see also In re Long*, 2014 WL 4629096, at *1 (Bankr. D. Md. Sept. 15, 2014) ("Because the state court case judgment was entered by default, it would have no preclusive effect in a dischargeability action."). A key aspect of this potential division is whether, in the default judgment context, issues are "actually litigated" as required by the issue preclusion doctrine. Other courts analyze the facts of each particular case, considering factors such as the opportunities for the defendant to participate in the proceeding, whether the judge accepted and reviewed evidence in the proceeding, the findings of the judge in the proceeding,

10

and policy considerations. *See, e.g.*, *In re Bernstein*, 197 B.R. 475 (Bankr. D. Md. 1996), *aff'd*, 113 F.3d 1231 (4th Cir. 1997).

The Maryland Court of Appeals appears to endorse the latter approach to analyzing claims of issue preclusion. In *John Crane, Inc. v. Puller*, 899 A.2d 879, 899 (Md. 2006), the Court of Appeals stated that "[t]he approach prescribed by Judge Eyler in *United Book v. Maryland Composition*, [786 A.2d 1, 12 (Md. Ct. Spec. App. 2001),] for searching for evidence of actual litigating is highly pertinent." *Id.* It then continued to quote directly from the *United Book* decision as follows:

> *In determining whether an issue has been actually litigated, courts may* look beyond the judgment to *examine the* pleadings and *evidence presented in the prior case….* ("[F]or the doctrine of collateral estoppel to apply, *the probable fact-finding that undergirds the judgment used to estop must be scrutinized to determine if the issues raised* in that proceeding *were actually litigated,* or facts necessary to resolve the pertinent issues were adjudicated in that action.")

*Id.* (emphasis in original) (internal citations omitted).

In this adversary proceeding, the Defendant had notice of the State Court action, including the initial default judgment and the subsequent damages award entered by the State Court. *See* State Court Tr. 37, ECF 24-3. The record contains no evidence that service was defective in the State Court action, and the Defendant offered no evidence to suggest that he lacked notice of the action. *See, e.g., Miles v. Bollinger*, 979 F.2d 848 (4th Cir. 1992) (table case) ("As a general rule, a nonmovant must respond to a motion for summary judgment with affidavits or other verified evidence, rather than relying on his complaint"); *Rolls-Royce PLC v. United Technologies Corp.*, 2011 WL 1949662, at *10 (E.D. Va. May 20, 2011) (explaining that "the 'mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]'") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Based on

11

the record before the Court, the Defendant took no steps to challenge the State Court Judgment

in the State Court, even after garnishment efforts were instituted by the Plaintiff. As the court in

*Bernstein* explained, "In this case, mitigating circumstances that might free the Defendant from

the tentacles of collateral estoppel are not present. Defendant had every incentive to defend

himself in the state court proceedings. It was foreseeable that issues raised for determination in

the state court proceeding could have severe, adverse consequences for the Defendant."

*Bernstein*, 197 B.R. at 481. Given these facts, the treatment of a default judgment as an

"admission of liability" under Maryland law is particularly relevant. *See, e.g., Phillip v. Reecher*

*(In re Reecher)*, 514 B.R. 136, 152 (Bankr. D. Md. 2014) ("'In Maryland, a default judgment is

considered more akin to an admission of liability than to a punitive sanction.'") (internal

citations omitted); *see also Porter Hayden Co. v. Bullinger*, 713 A.2d 962, 972 (Md. 1998)

(Maryland Court of Appeals explained that one of its prior decisions "stand[s] for the proposition

that a default judgment should be treated as an admission of liability").

Moreover, the State Court did not just enter a default judgment on liability, but conducted

an evidentiary hearing and made specific factual findings based on that evidence. *See, e.g.,*

*Jordan v. Moore*, 2010 WL 997065, at *7 (D. Md. Mar. 16, 2010) (explaining, for purposes of

issue preclusion in the context of a bankruptcy nondischargeability action under section 523, that

the state court "was acting as the trier-of-fact when she determined the appropriate punitive

damages award based on the facts of the case"). *Cf. Auton v. Smith (In re Smith)*, 2016 WL

3943710, at *6 (Bankr. D. Md. July 14, 2016) (declining to apply issue preclusion because "no

punitive damages were awarded, so there was no finding by the Circuit Court of knowing and

deliberate wrongdoing. In other words, there is no evidence of factual findings made by the

Circuit Court which would support" a section 523 claim). The State Court further articulated its

justifications for awarding damages, including punitive damages, under Maryland law. Under these circumstances, the Court finds that the issues pertinent to this adversary proceeding were actually litigated in the State Court action. This conclusion comports with other decisions in this district. *See, e.g., id*.; *Reecher*, 514 B.R. at 154; *Fleming v. McCoskey (In re McCoskey)*, 2006 WL 5217793 (Bankr. D. Md. Feb. 21, 2006).

The Court understands that the Defendant chose not to participate in the State Court action.[7] But that conscious decision cannot be used to the detriment of other parties who did all that was required of them, and fully litigated their claims, in the original proceeding. To hold otherwise would defeat the core objectives of the issue preclusion doctrine, including finality and judicial economy. *See, e.g., In re Microsoft Corp. Antitrust Litig*., 355 F.3d 322, 325 (4th Cir. 2004) ("Under the traditional rubric of *res judicata,* once a matter-whether a claim, an issue, or a fact-has been determined by a court as the basis for a judgment, a party against whom the claim, issue, or fact was resolved cannot relitigate the matter. Judicial efficiency and finality have demanded such a policy."); *Garrity v. Maryland State Bd. of Plumbing*, 135 A.3d 452, 458 (Md. 2016) ("The doctrine is based on two principles: judicial economy and fairness. Treating

---

[7] The Court also acknowledges that some courts ground application of issue preclusion in an appearance by the defendant in the subject litigation prior to the entry of default. *See, e.g., Bernstein*, 197 B.R. at 481. The Court understands and appreciates this distinction but finds it difficult to reconcile with the notion that a default judgment is an admission of liability under Maryland law. Moreover, in the absence of a defect in notice or other due process concerns, a defendant's choice to not participate in litigation from the start versus its decision to stop participating after the filing of an answer or a notice of appearance by counsel merits little distinction. In both instances, the defendant knows of the litigation and allows the plaintiff and the legal process to proceed in her absence. A defendant should not be able to use the bankruptcy process to eviscerate the deliberative findings of the state court in either scenario—again, assuming proper service and an opportunity to be heard in the state court litigation. *See, e.g., M&M Transmissions, Inc. v. Raynor (In re Raynor)*, 922 F.2d 1146, 1152 (4th Cir. 1991) (Niemeyer, J., dissenting) ("Collateral estoppel will bar relitigation of an issue previously decided if the party against whom the decision is asserted had 'a full and fair opportunity' to litigate that issue in the earlier case…. When applied to bankruptcy proceedings, the Supreme Court has admonished that res judicata effect will not be afforded dischargeability issues which could have been, but were not, litigated in an earlier proceeding…. Applying those principles here, I believe that the issues were actually and necessarily litigated and that, under the holding of *Combs,* Raynor should not now be given another opportunity to litigate them.") (internal citations omitted). Notably, although the majority in *Raynor* declined to apply issue preclusion, the defendant in that case was not aware of the action against him when the default judgment was entered. *Id.* at 1149 (*Raynor* did not involve Maryland law).

adjudicated facts as established 'protect[s] litigants from the burden of relitigating an identical

issue with the same party or his privy and ... promot[es] judicial economy by preventing needless

litigation.' *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 58 L.Ed.2d 552

(1979)."). The Court thus concludes that, under Maryland law, the State Court Judgment meets

each of the elements of the issue preclusion doctrine.

### C.  Application of Issue Preclusion to Section 523(a)(4)

The next question is whether the State Court's findings are sufficient to establish the

Plaintiff's claim under section 523(a)(4) of the Code. As referenced above, courts generally

consider three factors in evaluating a debt under section 523(a)(4): "'(1) the establishment of an

express trust regarding the funds; (2) that the debtor acted in a fiduciary capacity; and (3) the

debt is based upon the debtor's fraud or defalcation while acting as a fiduciary.'" *Goodwich*,

517 B.R. at 583 (internal citations omitted). The State Court Judgment addresses each of these

factors.

The State Court's findings included the following:

- "The fact that [the Defendant] made repeated statements to [the Plaintiff] knowing full well that they were false, that he couldn't touch the money while he was spending it on himself, to me, clearly shows, by clear and convincing evidence, that there was actual malice, that [the Defendant] knew exactly what he was doing." State Court Tr. 39, ECF 24.3.

- "And although your grandmother said you should not have the money if you're not 21 yet, it's governed by the Uniform Transfer to Minors Act which does envision the—that there may be drawn from the principal of the estate as needed for clothing, support, care, protection, welfare, and education. And I think certainly if—having transportation would fit in there as well as your thoughts on going to college, that you should have had access to that money before turning 21 for your education. And you didn't." *Id*. at 38–39.

- "So having considered that conduct and the Exhibits 1 and 2 regarding his income, I understand, obviously, there's limits to what can be garnished. So I do

14

find he would have an ability to pay and that he should be subject to a substantial punitive damage amount to discourage this type of conduct by others." *Id.* at 40.[8]

The State Court's findings, supported by the record in the State Court action, establish each element of section 523(a)(4). Under the Maryland Transfer to Minors Act, a custodian (such as the Defendant) is a fiduciary and is directed to "[a]t all times … keep custodial property separate and distinct from all other property in a manner sufficient to identify it clearly as custodial property of the minor." Md. Code, Estates and Trusts, § 13-312(d)(1).[9] The State Court made its decision, in part, based on the Minors Act and the Defendant's conduct thereunder. The State Court's findings of intentional, wrongful conduct and malice support a finding of fraud or defalcation under section 523(a)(4) of the Code. *See, e.g., Goodwich*, 517 B.R. at 584 (defining defalcation as an "intentional wrong" or consciously disregarding fiduciary duties). And finally, the State Court specifically stated that its conclusions were made under the clear and convincing evidence standard, which is even more demanding than the preponderance of the evidence standard applicable under section 523. *See* State Court Tr. 39, ECF 24-3; *see also Grogan*, 498 U.S. at 291. Accordingly, the State Court Judgment is determinative of the relevant factual issues contained in the Adversary Complaint and support the relief requested by the Motion.

---

[8] The State Court also suggested that the Defendant's conduct was similar to "conduct that preys on consumers," which the State Court noted has been addressed by Maryland statutory law in other contexts. *Id.*

[9] Under Maryland law, "[e]xpress trusts are created by the direct and willful acts of the parties, by some writing, or deed, or words expressly evidencing the intention to create a trust." *From the Heart Church Ministries, Inc. v. African Methodist Episcopal Zion Church*, 803 A.2d 548, 567 (Md. 2002); *see also Goodwich*, 517 B.R. at 584; *In re Khan*, 461 B.R. 343, 350 (E.D. Va. 2011). The Minors Act and section 9(h) of the Will create an express trust under Maryland law. *See* Md. Code, Estates and Trusts § 13-312(d)(1); Will § 9(h), ECF 24-5, Ex. 1-A; Affidavit of Gertrude C. Bartel, at 2, ECF 24-5, Ex. 1. Moreover, "'[o]ne is said to act in a "fiduciary capacity" or to receive money or contract a debt in a "fiduciary capacity," when the business [that] he transacts, or the money or property [that] he handles, is not his own or for his own benefit, but for the benefit of another person, as to whom he stands in a relation[ship] implying and necessitating great confidence and trust on the one part and a high degree of good faith on the other part.'" *Wagner v. State*, 128 A.3d 1, 23 (Md. 2015) (internal citations omitted). Although an express trust is not necessary to establish a fiduciary relationship, such a relationship typically arises in the context of an express trust. The Minors Act also charges a custodian to "(1) Take control of custodial property; (2) Register or record title to custodial property if appropriate; and (3) Collect, hold, manage, invest, and reinvest custodial property." Md. Code, Estates and Trusts § 13-312.

### IV.    Conclusion

For the reasons set forth above, the Court concludes that the State Court Judgment bars the parties from relitigating the issues raised by the Adversary Complaint. Under the doctrine of issue preclusion and applicable Maryland law, the State Court's findings are binding on the parties and this Court. The Plaintiff is entitled to summary judgment as requested by the Motion. The Court will enter a separate order consistent with, and granting the relief set forth in, this Memorandum Opinion.


**Copies to:**     Debtors
Debtors' Counsel
Damond Durant Jr.
Damond Durant Jr.'s Counsel
United States Trustee
Chapter 7 Trustee


**END OF MEMORANDUM OPINION**

16